**FOR PUBLICATION**

FILED
JEANNE A. NAUGHTON, CLERK
MAR 13 2017
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY _____ DEPUTY

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| In Re: | Case No.: 15-30672-ABA |
| LaRosa Greenhouse, LLP, | Chapter: 12 |
| Debtor. | Judge: Andrew B. Altenburg, Jr. |

## OPINION

**APPEARANCES**

David A. Kasen, Esquire
Kasen & Kasen
1874 East Route 70, Suite 3
Cherry Hill, NJ 08003
Attorney for Debtor

Andrea Dobin, Esquire
Trenk DiPasquale, et al.
427 Riverview Plaza
Trenton, NJ 08611
Chapter 12 Trustee

Lauren Bielskie, Esquire
Office of the Untied States Trustee
One Newark Center
Suite 2100
Newark, NJ 07102

## INTRODUCTION

LaRosa Greenhouse, LLP ("Debtor") filed a motion seeking to modify its chapter 12 confirmed plan. The motion sought to extend certain deadlines for the Debtor to make payments and to make other adjustments due to, *inter alia*, Debtor's counsel's intention to seek further post-confirmation compensation from the Debtor and/or the bankruptcy estate. Section 1229 of title 11 permits a debtor to modify a plan post-confirmation under certain circumstances. But the issues presented here are: 1) whether Debtor's counsel is entitled to compensation for post-confirmation services to be paid by the Debtor and/or the bankruptcy estate; and 2) whether the Debtor can modify its chapter 12 plan post-confirmation to address the payment of post-confirmation fees and expenses especially here, where a confusedly-drafted confirmation order has created alternative interpretations. For the reasons that follow, the answer to these questions is: yes.

## JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (L), and (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

This matter is before the court on the Debtor's Motion for *Modification of Chapter 12 Plan after Confirmation Pursuant to § 1229(a) of the Bankruptcy Code*, filed October 28, 2016 in which the Debtor sought permission to: (1) extend the time to pay the balance of the October 2016 installment due under the confirmed plan to unsecured creditors on or before December 31, 2016; (2) extend the time to pay the balance of the chapter 12 trustee's attorney's fees and costs on or before December 31, 2016; and (3) postpone determination of whether Debtor's counsel's allowed fees and expenses were less than $136,500 until such time as the court entered an order respecting Debtor's counsel's final application for fees and expenses. Issues were raised with regard to whether Debtor's counsel could seek further compensation from the estate post-confirmation and whether that final application should be calculated against the $136,500 amount set forth in the order confirming the Debtor's plan. By order dated December 5, 2016, this court granted the Debtor's first two requests but held in abeyance the third pending submissions of parties in interest. After the submissions, the court conducted a telephonic hearing on February 8, 2017 on the remaining issues. After considering the arguments of the parties and initially concluding that the Debtor's reading of the confirmation order was incorrect, the court promptly reconsidered its position and took the matter under advisement. The matter is now ripe for determination.

## FACTUAL BACKGROUND

The relevant facts are as follows. On November 2, 2015, the Debtor filed a voluntary petition for relief under chapter 12 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). On the same day, the Debtor filed an *Application for Retention of Professional* to retain Kasen & Kasen as counsel for the Debtor as a debtor in possession. On November 4, 2015, Andrea Dobin, Esquire, was appointed the chapter 12 trustee ("Trustee"). On November 24, 2015, the court entered an *Order Authorizing Retention of Attorneys for Debtor* (Doc. No. 48).

On January 29, 2016, the Debtor filed the *Debtor's Chapter 12 Plan of Reorganization* (the "Plan") (Doc. No. 75). The Plan included the following provision: "Kasen & Kasen has an administrative expense priority claim against the Debtor in the approximate amount of $100,000. This claim, to the extent it is allowed under 11 U.S.C. § 503(b), shall be paid from the Debtor's

future income from on-going operations . . . ." *Id*. The Plan also proposed that non-priority general unsecured creditors would receive pro-rata distribution of a total of $62,020 over a three year period.

After Debtor's negotiations with the Trustee and its creditors prior to the confirmation hearing, the court confirmed the Plan with the parties to submit an order on consent. The parties then negotiated the terms of and the court entered an *Order Confirming Chapter 12 Plan* on April 19, 2016 (the "Confirmation Order") (Doc. No. 115) that included the following paragraphs:

> IT IS FURTHER ORDERED that if and to the extent that the allowed fees and expenses of Debtor's counsel is less than $136,500, the difference between the allowed fees and expenses and $136,500 will be paid to the general unsecured creditors through the plan, as an addition to the distribution to be made in October, 2016 set forth below;
>
> IT IS FURTHER ORDERED that general unsecured creditors shall be paid in accordance with the following payment schedule:

| Month, Year | Payment to General Unsecured Creditors |
|---|---|
| October, 2016 | $15,000.00 |
| October, 2017 | $25,000.00 |
| October, 2018 | $42,335.00 |

Thus, pursuant to the Confirmation Order, non-priority general unsecured creditors were now to receive a total of $82,335 paid pro rata, *plus the difference between Debtor's counsel's allowed fees and expenses and $136,500,*[1] *if any* (the "Difference Payment"). This resulted in a potential increase of the amount to be paid to the unsecured creditor class proposed in the Plan. Thereafter, on June 8, 2016, the Court entered an *Order Amending Confirmation Order* (the "Amended Confirmation Order") (Doc. No. 124). The Amended Confirmation Order clarified a secured creditor's lien retention but otherwise kept all provisions of the Confirmation Order in full force and effect.

At the time of the Confirmation Order, there were no allowed fees and expenses of Debtor's counsel. Then, on July 18, 2016, Kasen & Kasen filed an *Application for Interim Allowance to Counsel for Debtor* (the "Interim Fee Application") (Doc. No. 131). In the Interim Fee Application, counsel requested an award of fees for the period of September 17, 2015 through July 14, 2016 in the amount of $163,555.00 plus expenses of $1,737.24, with a credit of $36,500.00 on account of a prepetition retainer. The Trustee objected to the Interim Fee Application (Doc. No. 146). On September 1, 2016, the Court issued an oral opinion (Doc. No. 149), and entered an *Order Granting Allowances*, granting Kasen & Kasen fees in the reduced amount of $123,000.00 and expenses in the amount of $1,737.24 for a total of $124,737.24 (Doc. No. 150) ("Allowance Order"). These were and remain the only allowed fees as of the end of October 2016 and to date.

---

[1] The court is not privy as to why the amount of $136,500 was selected as the dividing line.

On October 28, 2016, more than 180 days from the date of the entry of the Confirmation Order,[2] the Debtor filed a *Motion for Modification of Chapter 12 Plan After Confirmation Pursuant to § 1229(a) of the Bankruptcy Code* ("Motion to Modify Plan") (Doc. No. 159). The purpose of the Motion to Modify Plan was to extend certain deadlines for the Debtor to make payments pursuant to the Plan and Confirmation Orders. Relevant to this discussion, the Certification in Support of the Motion to Modify Plan (Doc. No. 159-2) contained the following paragraphs:

> 11. The Order Confirming Plan also indicates that to the extent that the allowed counsel fees and expenses of the debtor's counsel were less than $136,500.00, the difference between those allowed fees and expenses and $136,500.00 would be paid to the general unsecured creditors through the Plan as an addition to the distribution to be made in October, 2016. The allowed amount of counsel fees and expenses as allowed to the attorneys for the debtor in accordance with their Interim Fee Application for Fees and Expenses was $124,737.24 ($123,000.00 fees and $1,737.24 expenses awarded). Thus the difference between $136,500.00 and the amount allowed for interim fees and expenses is $11,762.76.
>
> 12. Debtor's counsel expects to shortly file an additional fee application for services rendered and expenses incurred after July 14, 2016, which is the end date of the initial Interim Application.
>
> 13. To the extent that after a Final Fee Application there is still a difference between $136,500 and the total fees and expenses allowed, the debtor can and will pay any balance due under the Order Confirming Plan to be distributed to unsecured creditors.
>
> 14. The debtor is asking that the confirmed plan be modified in accordance with this Certification to allow the debtor to pay the remaining balance of $7,500.00 to the allowed unsecured creditors by December 31, 2016, the remaining balance due to the attorneys for the Chapter 12 Trustee by December 31, 2016, and to postpone any obligation to pay the difference between allowed fees and expenses to the attorneys for the debtor and $136,500.00 until after a Final Fee Application is decided.

*Id.*[3]

---

[2] Section 1230 provides for revocation of a confirmation order if requested within 180 days after the date of the entry of a confirmation order, if the order was procured by fraud.

[3] Debtor's counsel continuously referred to a "Final Fee Application," a term used in Chapter 11 where debtors' counsellors file interim fee applications throughout the case, concluding with a "final" fee application. But as will be explained, compensation of chapter 12 debtors' counsellors follows the chapter 13 model, with fee applications filed as fees and expenses occur. In addition, the court declines to opine on whether the Allowance Order, or any future fee orders, are "final" for appeal purposes.

The Trustee filed a *Certification in Response to Debtor's Motion to Modify Chapter 12 Plan* (Doc. No. 161). She argued that Debtor's counsel is not permitted to file an additional fee application because "by analogy to Chapter 11, in this post-confirmation Chapter 12 case, the Debtor's counsel is no longer obligated or entitled to file a fee application to have its fees 'allowed' such that they impact the Chapter 12 Estate generally." *Id.* The Trustee also noted that by filing an additional fee application, Kasen & Kasen was seeking to reduce the Difference Payment. *Id.*

On November 22, 2016, the Court held a hearing on the Motion to Modify Plan. At that time, the Acting United States Trustee ("US Trustee"), the Trustee and Debtor's counsel appeared. Upon conclusion of the hearing, the court directed further briefing on the issues presented. Each of the parties submitted pleadings. None of the parties further addressed the issue of the Difference Payment and the finality of allowed fees. As a result, the court conducted a telephonic hearing on February 8, 2017[4] and let the parties state their cases.

## DISCUSSION

**1. Chapter 12 Background**

As noted, this is a chapter 12 case involving a farm. A brief discussion of chapter 12 will aid in understanding this court's determination of the issues presented.

"In 1986, Congress enacted Chapter 12 of the Bankruptcy Code, § 1201 *et seq.,* to allow farmer debtors with regular annual income to adjust their debts. Chapter 12 was modeled on Chapter 13, § 1301 *et seq.,* which permits individual debtors with regular annual income to preserve existing assets subject to a 'court-approved plan under which they pay creditors out of their future income.'" *Hall v. United States*, 566 U.S. 506, 132 S. Ct. 1882, 1885, 182 L. Ed. 2d 840 (2012) (citing *Hamilton v. Lanning,* 560 U.S. 505, 508, 130 S. Ct. 2464, 2469, 177 L. Ed. 2d 23 (2010)). *See also In re Hemann*, No. BR 11-00261, 2013 WL 1385404, at *5 (Bankr. N.D. Iowa Apr. 3, 2013). Like chapter 13 cases, there can be no involuntary chapter 12 cases and only the debtor may propose a plan. *See* 11 U.S.C. §§ 303(a) and 1221. Also like chapter 13 cases, a trustee is appointed but it is the debtor, unless otherwise removed, that remains the debtor in possession and operates the farm. 11 U.S.C. §§ 1202, 1203 and 1207(b). *See also In re Tarby*, No. 11-32886/JHW, 2012 WL 1390201, at *5 (Bankr. D.N.J. Apr. 20, 2012) (the Debtor shall remain in possession of all property of the estate pursuant to 1207(b)); *In re Hepworth*, No. 99-41514, 2000 WL 33712220, at *1 (Bankr. D. Idaho May 30, 2000) (debtors in Chapter 12, unless removed, occupy the status of debtors-in-possession); *In re Muzzey*, No. 89-00149, 1990 WL 106716, at *2 (Bankr. D. Vt. May 14, 1990) (chapter 12 debtor has the power to operate the debtor's farm). Finally, analogous to chapter 13 cases, and unlike more complicated chapter 11 cases, there is no creditors' committee, no disclosure statement is prepared, creditors do not get to vote on the plan and there is no absolute priority rule preventing debtors from retaining assets without full payment to creditors. *See* 11 U.S.C. § 1225 and *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 211, 108 S. Ct. 963, 971, 99 L. Ed. 2d 169 (1988).

---

[4] The US Trustee chose not to participate in the telephonic conference.

While chapter 12 cases are modeled after chapter 13 cases, there are specific references to chapter 11 provisions in chapter 12. Perhaps recognizing the need to provide chapter 12 debtors in possession with broader rights and powers than those provided under chapter 13, Congress, through section 1203, provided that chapter 12 debtors in possession "shall have all the rights, other than the right to compensation under section 330, and powers and shall perform all the functions and duties, except the duties specified in paragraphs (3) and (4) of section 1106(a), of a trustee serving in a case under chapter 11, including operating the debtor's farm or commercial fishing operation." 11 U.S.C. § 1203. *See also In re Jones*, 505 B.R. 229, 231 (Bankr. E.D. Wis. 2014) (chapter 12 debtor is charged with performing the duties of a trustee); *In re Merrifield*, 214 B.R. 362, 364 (B.A.P. 8th Cir. 1997); *In re Molnar Bros.*, 200 B.R. 555, 558 (Bankr. D.N.J. 1996) (debtor retained all of the rights and duties of a trustee (with certain exceptions not relevant here) because it operated the farm as a debtor-in-possession).

One important power provided to chapter 12 debtors in possession is the right to seek the employment of counsel. Pursuant to section 327 of the Code:

> the trustee, with the court's approval, may employ one or more attorneys . . . or other professional persons . . . to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). Accordingly, a chapter 12 debtor in possession is permitted to retain professionals, including attorneys pursuant to section 327. *In re Cashen,* 56 Fed. Appx. 714, 716, 2002 WL 31828435, *2 (7th Cir. 2002); *In re Swenson*, No. 09-41687, 2013 WL 3776318, at *2 (Bankr. D. Kan. July 16, 2013) (citing *In re French,* 139 B.R. 485, 488 & n. 3 (Bankr. D.S.D. 1992); *In re Brown,* 354 B.R. 535, 539 (Bankr. N.D. Okla. 2006)); *see also In re Thorpe*, No. 13-15267 ELF, 2017 WL 664017, at *16 (Bankr. E.D. Pa. Feb. 17, 2017) (chapter 12 debtor must obtain court approval to retain professionals) (citing *In re Stacy Farms*, 78 B.R. 494, 499 (Bankr. S.D. Ohio 1987); *Matter of Slack*, 73 B.R. 382, 382 (Bankr. W.D. Mo. 1987)).

Further, parties retained under section 327 can be awarded fees and expenses under section 330, which, in part, provides:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to . . . a professional person employed under section 327 or 1103—
>
> > (A) reasonable compensation for actual, necessary services rendered by the . . . professional person. . .; and
> > (B) reimbursement for actual, necessary expenses.

11 U.S.C § 330(a)(1). "An award under § 330(a) is entitled to administrative expenses status." *In re Swenson*, 2013 WL 3776318, at *2 (citing 11 U.S.C § 503(b)(2)). There is nothing in the Bankruptcy Code requiring different treatment under § 330(a)(1) for counsel for the debtor in possession in chapter 12 cases than in other cases. *Id*. Hence, chapter 12 counsel fees are administrative expenses.

Estate property must be distributed in the priority order set forth in section 507. *In re Molnar Bros.*, 200 B.R. at 558. Administrative expenses allowed under section 503(b) are afforded second priority under section 507. *See* 11 U.S.C. § 507(a)(2). Except for certain governmental claims, a chapter 12 plan must provide for full payment of priority claims in order of priority in deferred cash payments. *Hall v. U.S.*, 132 S. Ct. at 1885 (citing 11 U.S.C. § 1222(a)(2)). However, a priority claim creditor can agree to a different treatment. *See* 11 U.S.C. § 1222(a)(2)(B). Section 1226 clearly provides for "the trustee or the debtor" to make payments under the plan and for those payments to be made "in accordance with the plan." *In re McCann*, 202 B.R. 824, 829 (Bankr. N.D.N.Y. 1996) (citing 11 U.S.C. §§ 1225(a)(5)(B)(ii), 1226(a)).

Unless otherwise provided in the plan, confirmation vests all of the property of the estate back into the Debtor. *Hall v. United States*, 132 S. Ct. at 1897; *In re Thorpe*, 2017 WL 664017, at *15 (quoting 11 U.S.C. §1227(b)). The Plan in this case specifically provides that "all property of the estate shall revest in the Debtor." (Doc. No. 75, p. 15.)

## 2. Kasen & Kasen Is Entitled to Compensation For Post-Confirmation Services to Be Paid by the Debtor and/or the Bankruptcy Estate

With this background, the court addresses the issue initially raised by the Trustee of whether Kasen & Kasen's post-confirmation attorney fees and costs are an estate obligation. The court recognizes that the Trustee has now, subsequent to the submission of the US Trustee, adopted the position of the US Trustee, and for that matter, Kasen & Kasen, that they are. Nevertheless, since there "no case law on point," Doc. No. 161, p. 4, the court is hopeful that its opinion will provide guidance in future cases.

As pointed out by the US Trustee in its submission, "[i]n a chapter 11 non-individual case, the vesting of estate property in the debtor upon confirmation means that the estate ceases to exist. *See In re Resorts Int'l, Inc.*, 372 F.3d 154, 165 (3d Cir. 2004). As there is no longer an estate, services rendered by professionals employed under section 327 are no longer rendered on behalf of an estate – and so are no longer compensable from the estate under section 330(a) or allowable as an administrative expense of the estate under section 503(b)." Doc. No. 166, ¶ 27.

By contrast, in chapter 12 cases, the vesting of estate property in the debt or upon confirmation does not dissolve the bankruptcy estate, as section 1207(a) provides:

Property of the estate includes, in addition to the property specified in section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 of this title, whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 of this title, whichever occurs first.

11 U.S.C.A. § 1207(a).[5] Notably, "confirmation" is not one of the events that ends the bankruptcy estate. In addition, section 1207(b) provides that "the debtor shall remain in possession of all property of the estate." 11 U.S.C.A. § 1207(b). "The debtor can remain in possession of property except as stated in the confirmed plan or the order confirming the plan, unless § 1204 applies, i.e., the debtor is removed from possession by order of the court." *In re Roesner*, 153 B.R. 328, 332 (Bankr. D. Kan. 1993). This contemplates a post-confirmation estate. This court agrees with this conclusion. *See In re Thorpe*, 2017 WL 664017, at *13, n. 26. "Where . . . the statute's language is plain, 'the sole function of the court is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S. Ct. 1026, 1030, 103 L. Ed. 2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S. Ct. 192, 194, 61 L. Ed. 442 (1917)). If Congress had intended confirmation of a chapter 12 plan to dissolve the bankruptcy estate or the debtor's possession of property of the estate, it could easily have said so, but it did not. Thus the court is convinced that the plain language of section 1207 supports that a bankruptcy estate exists post-confirmation in a chapter 12 case.

Here, Kasen & Kasen was properly retained as an estate professional and remains an estate professional under section 327. Because the bankruptcy estate still exists post-confirmation, Kasen & Kasen must from this court seek an award of compensation under section 330(a) and Federal Rule of Bankruptcy Procedure 2016(a) by filing a fee application.[6] If its fees and expenses meet the requirements of section 330 and demonstrate a benefit to the chapter 12 bankruptcy estate, Kasen & Kasen may be awarded compensation. *See In re Brandenburger*, 145 B.R. 624 (Bankr. D.S.D. 1992). Any compensation awarded to Kasen & Kasen will be afforded administrative expense status under section 503(b)(2) and be paid pursuant to sections 507(a)(2) and 1226(b)(1).[7] It should be noted that the Plan provides that "[t]he Debtor shall use its future income from on-going operations to meet all of its post-confirmation obligations not otherwise provided for herein" and likewise, Kasen and Kasen's compensation will be paid from the Debtor's future income from on-going operations. Doc. No. 75, pp. 11 and 13.

---

[5] This provision is similar to section 1306(a), applicable in chapter 13 cases. Other courts have concluded in chapter 13 cases, under a similar provision, that post-confirmation, the bankruptcy estate continues to exist. *See In re Clouse*, 446 B.R. 690 (Bankr. E.D. Pa. 2010) and *In re Chang*, 438 B.R. 77, 84 (Bankr. M.D. Pa. 2010).

[6] Likewise, the Debtor and/or counsel should advise any other professionals that intend to seek compensation for post-confirmation services that they must be properly retained and eventually file fee applications. "Absent court approval, neither the debtor nor the estate is liable for legal services related to a Chapter 12 bankruptcy." *In re Brown*, 371 B.R. 486, 499 (Bankr. N.D. Okla.), *amended,* 371 B.R. 505 (Bankr. N.D. Okla. 2007).

[7] All rights are reserved with regard to the impact of additional allowed compensation, if any, on the feasibility or enforceability of the Debtor's Plan. To that end and in addition, the court does not necessarily agree with the US Trustee that additional allowed professional compensation can reduce the negotiated Plan payment of $82,335 to the unsecured creditor class.

### 3. The Debtor Can Modify Its Chapter 12 Plan Post-Confirmation to Address the Confusedly-Drafted Confirmation Order Containing Unclear Terms Concerning the Payment of Unsecured Claims

One would think that a straightforward reading of the Confirmation Order would lead to the conclusion that, if in October of 2016 Kasen & Kasen's to date allowed fees and expenses were less than $136,500, the Difference Payment would be paid to the general unsecured creditors in addition to and together with the distribution already to be made to unsecured creditors in October 2016. In October 2016, Kasen & Kasen's only allowed fees and expenses totaled $124,737.24. With that in mind, the Difference Payment would be $11,762.76 ($136,500 less $124,737.24) and should be distributed to the unsecured creditors in October 2016. Instead, the Debtor argues that allowed fees have to be "final" in order for the formula thereunder to work, and alleges that the Allowance Order is not a final order nor has it prepared and filed a final fee application. For these reasons, the Debtor seeks an extension of time to pay the Difference Payment until all allowed fees are finalized.

In short, the language in the Confirmation Order as it pertains to the Difference Payment is not well-defined. What exactly are "allowed fees and expenses"? Considering the court's position on the appropriateness of post-confirmation fee applications set forth above, allowed fees and expenses might be incurred until the closing of the case. Thus, the Confirmation Order is unclear and creates confusion giving rise to alternative interpretations of what "allowed fees and expenses" are.[8] With this in mind, the court finds that the Motion to Modify can remedy the defect in the Confirmation Order because the modification, seeking to extend the time to make the Difference Payment until all fees and costs are determined, in essence, seeks to address the treatment of claims. Without curing the defect, the Plan, as modified by the Confirmation Order, fails, so an extension of time to make payments is necessary. Modification is permissible under 11 U.S.C. § 1229(a) when it addresses the treatment of claims as provided for therein. *In re Wruck*, 183 B.R. 862, 865 (Bankr. D.N.D. 1995). In particular, section 1229 provides:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, on request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--

    (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

    (2) extend or reduce the time for such payments; or

---

[8] The court is at a loss as to why the parties, when negotiating the terms of the Confirmation Order, failed to easily clarify what allowed fees and expenses were to be considered in determining the Difference Payment. Unfortunately, the record at the time of confirmation is no help in understanding what was considered by the parties.

> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1229(a). "Unanticipated changes in circumstances and unexpected problems associated with the implementation of a plan militate in favor of a certain degree of flexibility to the operation of § 1227 and the doctrine of res judicata. The framers of the Code recognized this need for flexibility and provided for it in § 1229." *Wruck*, 183 B.R. at 865. The Motion to Modify clearly identifies the unexpected problem associated with the implementation of the Plan and attempts to remedy the defect.

Here, paragraph (2) of section 1229(a) applies. Because an unexpected problem has arisen, i.e., the confusion as to the extent of allowed fees and expenses, the implementation of the Plan through the Confirmation Order and the timing of a payment thereunder must be extended. While initially it appears that the Confirmation Order requires the Difference Payment to be made in October 2016, nothing else in the record before the court, including the pleadings submitted and the arguments of the parties, convinces the court that the alternative interpretation requiring distribution of the Difference Payment after allowance of all fees and expenses is wrong. No bad faith has been demonstrated. No compelling challenge has been made. In considering the evidence and the positions of the parties at the time the Confirmation Order was negotiated, the Debtor's interpretation makes sense and it is not unreasonable or irrational to conclude that this was or should have been envisioned.[9] Unfortunately, poor draftsmanship that created alternative interpretations of the Confirmation Order has created an unexpected problem with implementation of the Plan and the timing of a payment thereunder. Because of this, the court must extend the time for the Debtor to make the contemplated distribution, if any, until after a determination of all allowed fees and expenses.[10]

---

[9] Based upon the arguments made by the parties, the court is not convinced that the Confirmation Order was thought through entirely, consequently requiring modification to cure the defect.

[10] The court recommends that future chapter 12 plan proponents take into account the impact of possible post-confirmation professional fees in order to avoid the need for post-confirmation plan modifications.

## CONCLUSION

The court finds Kasen & Kasen must file fee applications for compensation for post-confirmation services to be paid by the Debtor from the bankruptcy estate. After it files its last fee application, the Difference Payment shall be calculated and, if a positive amount, paid by the Debtor. It further finds the Debtor can modify its chapter 12 plan post-confirmation to permit retained professionals to seek compensation for post-confirmation services and to address the Difference Payment in this way.

An appropriate judgment has been entered consistent with this decision.

The court reserves the right to revise its findings of fact and conclusions of law.


/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: March 13, 2017